UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-103-FDW

| | |
|---|---|
| STANLEY CORBETT, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| FRANK PERRY, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on initial review of *pro se* Plaintiff's Complaint, (Doc. No. 1). Plaintiff is proceeding *in forma pauperis*. (Doc. No. 8).

**I.     BACKGROUND**

*Pro se* Plaintiff filed a civil rights suit pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the North Carolina Tort Claims Act addressing incidents that allegedly occurred at the Lanesboro Correctional Institution.[1] He names as Defendants: North Carolina Department of Public Safety ("NC DPS") former Secretary of Corrections Frank Perry, NC DPS Chief Health Director Paula Smith, and the following employees of Lanesboro C.I.: Superintendent David Mitchell, Nurse Supervisor Hopkins, Doctor Gregory Haynes, Chief Medical Administrator John Doe, Nurse Rushin, Nurse Patch, Nurse Totou, Nurse Vanscoutovan, and Nurse Boss.

Liberally construing the Complaint and accepting the allegations as true, Plaintiff suffers from chronic hives, also known as urticaria. Plaintiff broke out with hives while incarcerated at Warren C.I. in March, 2015. He was transferred to Lanesboro C.I. on April 19, 2015, where he

---

[1] Plaintiff filed the Complaint while he was incarcerated at the Maury Correctional Institution, where he still resides.

1

suffered from inadequate medical care from April, 2015, to May 12, 2016.

On April 10, 2015, Plaintiff went to see an outside dermatologist at the University of North Carolina, who recommended several medications for Plaintiff's hive condition. The dermatologist also recommended that Plaintiff receive a follow-up examination in five weeks if the medications did not help.

Plaintiff submitted a sick call request and declared a medical emergency on April 19, 2015, because he had hives on his body that were causing swelling to his arms and legs, severe pain, and itching. Plaintiff wrote to Defendant Smith regarding his medical issues on April 23, 2015. On April 29, 2015, Plaintiff was moved from segregation to medical for observation because Plaintiff was on hunger strike to protest his lack of medical treatment. On May 3, 2015, Plaintiff submitted a grievance because he was not receiving the medications recommended by the UNC dermatologist, his sick calls were not being addressed, and his feet and legs had been going numb from the hives/swelling and were bleeding. On May 7, 2015, Plaintiff wrote to Defendant Mitchell about his sick calls and grievances not being processed. Plaintiff submitted a sick call request about the hives on his body, which were causing severe pain, swelling, and itching, on May 11, 2015. Defendant Vanscatovan denied Plaintiff's request for a medical emergency.

Plaintiff saw a doctor on May 15, 2015, about his hives who prescribed Benadryl and another medication. On May 21, 2015, after five weeks of continuous outbreaks of hives, Defendant Haynes prescribed Plaintiff one of the medications recommended by the UNC dermatologist. However, the prescription was for the medication was once per day even though the UNC dermatologist recommended it twice per day. Plaintiff did not receive the proper medications recommended by the dermatologist. On May 22, 2015, Defendant Toutu denied Plaintiff's hive medication, telling him that he did not get any medication for hives. On May 23,

2

2015, Plaintiff received Tretinoin cream and clindamycin for bumps/acne. On May 27, 2015, Defendant Toutu denied Plaintiff's hive medication again, saying he did not have any medication for hives. On May 31, 2015, Plaintiff submitted a sick call request about hives, itching, pain, bleeding, and numbness. On June 1, and 6, 2015, Plaintiff submitted sick call requests and sent a copy to Defendants Smith and Mitchell. On June 7, 2015, Plaintiff declared a medical emergency due to itchy hives all over his body. Defendant Vanscotovan, the same nurse who denied Plaintiff's request for a medical emergency on May 11, gave Plaintiff Benadryl and calamine lotion. On June 11, 2015, Nurse Bradley denied Plaintiff's noon medication, telling him he did not have any noon medication. That same day, Defendant Rushin denied Plaintiff's evening and nighttime medications, telling Plaintiff that he did not get any medication for hives. On June 12, 2015, Defendant Patch denied Plaintiff's evening and nighttime medications, claiming that Plaintiff did not have any medication for hives. Plaintiff submitted sick calls, sent letters to Defendants Perry, Smith and Mitchell, and submitted a grievance about his medical issues between April 19 and June 24, 2015, but treatment was denied and/or delayed.

Plaintiff went to Charlotte Dermatology on June 24, 2015, more than two months after his UNC visit. It was recommended that Plaintiff see an allergy clinic. Plaintiff submitted numerous sick call requests between June 24, 2015, and March 4, 2016, about his medical conditions but they were ignored, delayed, or made to appear as though Plaintiff saw medical staff or refused sick call appointments. During this time period, Plaintiff declared numerous medical emergencies and requested to see an allergy clinic numerous times, and his requests for hive medication were constantly denied and delayed by Lanesboro C.I. medical staff. On July 1, 2015, Defendant Patch denied Plaintiff's nighttime medication, telling him that he did not have any medication. On July 14, 2015, Defendant Vanscotovan denied Plaintiff's sick call, saying that Plaintiff refused his

3

appointment. On August 3, 2015, Defendant Haynes prescribed Periactin for Plaintiff's hives. On August 16, 2015, Plaintiff declared a medical emergency and Nurse Hill gave him Benadryl and some cream for hives.

On August 18, 2015, Plaintiff's blood was drawn for an allergy test. He had been requesting this test for months but it was delayed by medical staff and Defendant Haynes, which contributed to the continuous hive outbreaks. The test results showed that Plaintiff is allergic to milk and peanuts. On September 1, 2015, Plaintiff submitted a sick call request regarding hives all over his body and asked to see the allergy clinic. On September 5, 2015, Plaintiff declared a medical emergency due to hives on his legs and Nurse Ratcliff gave him Benadryl.

On September 7, 2015, Plaintiff saw Defendant Haynes about hives on his thigh and arms, and requested to be scheduled to see the allergy clinic specialist. On September 8, 2015, Plaintiff declared a medical emergency about hives on his body and Nurse Crump gave him a tube of hydrocerin cream. On September 24, 2015, Plaintiff submitted a sick call request and a medical emergency due to hives and a swollen right leg/knee. Nurse Perkins gave him Benadryl.

On September 28, 2015, Plaintiff saw Defendant Haynes and Plaintiff again asked to be scheduled to see the allergy clinic. On October 21, 2015, Plaintiff broke out in hives all over his body. He declared a medical emergency but Defendant Boss denied this request. On October 22, 2015, Plaintiff continued to break out in hives all over his body. He declared another medical emergency which Defendant Boss denied again.

On November 9, 2015, Plaintiff saw Dr. Southerland about the hives on his body. She prescribed medication but it was not ordered until approximately two months later. On November 18, 2015, Defendant Boss denied Plaintiff's evening and nighttime medications for hives, claiming that Plaintiff did not have any medication. On November 20, 2015, Plaintiff submitted a sick call

request concerning his continuous outbreaks of hives and requesting the medications that Dr. Southerland had prescribed, and to see the allergy clinic. On December 2, 2015, Plaintiff declared a medical emergency due to hives on his arms, legs, and hands, and for swelling in his right hand and wrist. Nurse Wilkinson gave him Benadryl. On December 27, 2015, Plaintiff submitted a sick call request about hives on the top and back of his head and asked to see the allergy clinic. On December 28, 2015, Plaintiff declared a medical emergency about the itchy, painful hives on the back of his head. Nurse Morgan gave him Benadryl.

On January 1, 2016, Plaintiff saw Dr. Southerland about his hives. She prescribed steroids, Benadryl, and another medication. She told Plaintiff that she had prescribed it in November, 2015. She looked on the computer and saw that the medication was never ordered.

On January 1, 2016, Plaintiff spoke to Lanesboro C.I. Assistant Superintendent Beaver about a grievance complaining about inadequate medical treatment. Beaver told him that the medical staff was backlogged by 500 sick call requests and that medical staff from other regions come to Lanesboro to help. Plaintiff alleges that this backlog resulted in sick call requests being unanswered, thrown away, marked as refused, or marked as appointments when no appointment occurred.

On January 13, 2016, Plaintiff finally went to a sick call appointment. Defendant Totou denied Plaintiff's morning Benadryl and noon medications that same day. On February 24, 2016, Plaintiff submitted a sick call request about hives all over his body and requested to see the allergy clinic.

It took over eight months for medical staff at Lanesboro C.I. to schedule an appointment for him to see an allergy clinic on March 4, 2016. Dr. Collins prescribes several medications for hives. Plaintiff was transferred to Alexander C.I. on March 30, 2016. He did not receive the

medications that Dr. Collins prescribed until May 12, 2016.

Only one or two of Plaintiff's numerous sick call requests while he was in Lanesboro C.I.'s Anson Unit between April 19, 2015, to March 30, 2016, were processed according to NC DPS Medical/ Health Policy & Procedure. Plaintiff had to declare multiple medical emergencies and go on hunger strikes just to see medical staff. Almost every time Plaintiff saw a doctor at Lanesboro C.I., he was on a hunger strike. The delay in medical treatment led to pain, itching, bleeding, swelling, suffering, anxiety, and mental and emotional distress.

Defendants Mitchell, John Doe, Haynes, and Hopkins, are responsible for medical care and for arranging for specialized medical care outside of the prison. Defendants Perry and Smith are responsible for medical care concerning all prisoners within NC DPS Division of Adult Corrections. Defendants have not implemented treatment policies or procedures by authorizing an effective sick call system, a system for following up outside medical professionals' recommendations, or a system for scheduling outside medical appointments in a timely manner. Defendants have failed to provide medical treatment for Plaintiff's condition that are consistent with current medical community standards.

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs. Defendants Perry, John Doe, Hopkins, Smith, and Mitchell's failure to train their staff, failing to take action, and delaying treatment despite their first-hand knowledge of Plaintiff's medical condition, medications, and treatment. Defendant Haynes' failure to follow recommendations from the dermatologists at UNC and Charlotte Dermatology. Defendants Hopkins, Vanscotovan, Totou, Patch, Rushin, Boss, and John Doe denied and ignored Plaintiff's sick call requests, grievances, and medical emergencies, and denied him his prescribed medications. Defendants Mitchell, John Doe, Haynes, and Hopkins failed to schedule a timely appointment for Plaintiff to

see the allergy clinic. Defendants Perry, Smith, Mitchell, John Doe, Vanscotovan, and Hopkins failed to establish an effective sick call system, failing to establish a sufficient system for following outside medical recommendations, and failing to schedule outside medical appointments in a timely manner. Defendants Vanscotovan and Boss failed to provide adequate medical care by denying his medical emergencies about chronic urticaria. Defendants Totou, Patch, Rushin, Boss, Mitchell, John Doe, and Hopkins failed to provide Plaintiff with the prescribed medications. Defendants John Doe, Haynes, and Hopkins also failed to inform Plaintiff that the consistent swelling beneath his skin was angioderma which, along with chronic urticaria, can affect his lungs, muscles, and gastrointestinal tract.

Plaintiff alleges that Defendants Mitchell, John Doe, Haynes, Hopkins, Vanscotovan, Totou, Patch, Rushin, and Boss all agreed on an illegal course of conduct that they knew violated Plaintiff's constitutional rights in violation of 42 U.S.C. § 1985.

Plaintiff alleges that Defendants Perry, Smith, Mitchell, John Does, and Hopkins failed to properly train medical staff who they oversee which is negligence under the North Carolina Tort Claims Act.

He seeks declaratory judgment, injunctive relief, compensatory and punitive damages, the costs of this suit, any other relief the Court deems just and equitable, and a jury trial.

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory

7

or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

**III.     DISCUSSION**

**(1)     Parties**

**(a)** **Individuals Not Named as Defendants**

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, Haines, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," Pliler v. Ford, 542 U.S. 225 (2004).

The body of the Complaint contains allegations against individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders Plaintiff's allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served). Therefore, to the extent that Plaintiff intended to assert a claim against any of these individuals, it is dismissed without prejudice.

**(b)** **John Doe**

John Doe suits are permissible only against "real, but unidentified, defendants." Schiff v. Kennedy, 691 F.2d 196, 197 (4th Cir. 1982). The designation of a John Doe defendant "is generally not favored in federal courts; it is appropriate only when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the defendant after further discovery." Njoku v. Unknown Special Unit Staff, 217 F.3d 840, 840 (4th Cir. 2000). "[I]f it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court, the court could dismiss the action without prejudice." Schiff, 691 F.2d at 197-98 (because it appeared that John Doe was an actual person, it was error for the district court to conclude that, under appropriate circumstances, this type of case

would not be permitted).

Plaintiff identified the John Doe Defendant as the "Chief Medical Administrator" at Lanesboro C.I. However, he does not provide any other identifying information for that individual or explain his involvement in Plaintiff's care. This information is insufficient to identify John Doe at this time, however, dismissal is without prejudice for Plaintiff to move to amend the Complaint should he be able to identify John Doe during discovery.

**(2)** **§ 1983**

    **(a)** **Deliberate Indifference**

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. Hudson v. McMillian, 503 U.S. 1, 1 (1992).

A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Hudson, 503 U.S. at 5, and must result in the denial of "the minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The second requirement is subjective and requires that a prison official must have a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297, 302-03; Hudson, 503 U.S. at 5, 8. An actionable deliberate indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a "substantial *risk* of serious harm." Farmer v. Brennan, 511 U.S. 825, 837 (1994) (emphasis added). The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference." Farmer, 511 U.S. at 837; Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998).

To state a *prima facie* case of deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifferent to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer, 511 U.S. at 825. However, mere negligence or malpractice does not violate the Eighth Amendment. Miltier, 896 F.2d at 852.

Assuming that chronic hives constitutes a serious medical need, Plaintiff has adequately alleged that the Defendants knew about his painful and potentially dangerous condition and nevertheless repeatedly delayed and denied treatment. Plaintiff's medical deliberate indifference claim with therefore be permitted to proceed.

**(b)** **Supervisory Liability**

A state official can be in a § 1983 suit in three ways: in his personal capacity, his official capacity, or in a more limited way, his supervisory capacity. King v. Rubenstein, 825 F.3d 206, 223–24 (4th Cir. 2016). For personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159,

166 (1985). In an official-capacity suit, however, "[m]ore is required:" the suit is "treated as a suit against the entity," which must then be a "'moving force' behind the deprivation," id. (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); thus, the entity's "'policy or custom' must have played a part in the violation of federal law," id. (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)). Meanwhile, a supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

Plaintiff has adequately alleged that each of the supervisory Defendants were either personally involved in his treatment, knew of his inadequate treatment and failed to act, and/or established policies and training that resulted in the lengthy delays and numerous denials of adequate care. Therefore, Plaintiff's claims will be permitted to proceed against the supervisory Defendants.

**(3)** **§ 1985**

To state a claim under 42 U.S.C. § 1985, a plaintiff must show: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. Thomas v. The Salvation Army S. Territory, 841 F.3d 632, 637 (4th Cir. 2016) (citing Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995)). To prove a § 1985 "conspiracy," a plaintiff must show an agreement or meeting of the minds by the defendants to

violate the plaintiff's constitutional rights. Simmons, 47 F.3d at 1377.

Plaintiff fails to allege that Defendants had any specific class-based, invidiously discriminatory animus towards him that underlies their agreement to violate his constitutional rights. Plaintiff's civil conspiracy claim will therefore be dismissed.

**(4)     North Carolina Negligence**

The district courts have supplemental jurisdiction over claims that are so related to the claims over which the court has original jurisdiction that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A court may decline to exercise supplemental jurisdiction if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c)(1)-(4).

Because Plaintiff has stated facially sufficient claim of deliberate indifference to a serious medical need, his related state law negligence claim will be permitted to proceed at this time.

**IV.     CONCLUSION**

For the reasons stated herein, the Complaint is sufficient to proceed against all Defendants for deliberate indifference to a serious medical need, and/or for failure to adequately train, supervise, and establish policies to ensure adequate medical care. The remaining claims are dismissed. Plaintiff may file a superseding Amended Complaint within 14 days in which he may attempt to add parties and cure the deficiencies identified in this Order.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's § 1983 claims against Defendants Perry, Smith, Mitchell, Hopkins, Haynes,

Rushin, Patch, Totou, Vanscoutovan, and Boss survive initial review under 28 U.S.C. § 1915.

2. The Court will exercise supplemental jurisdiction over Plaintiff's North Carolina negligence claim.

3. The remaining claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

4. Plaintiff shall have 14 days in which to file a superseding Amended Complaint in accordance with this Order and all applicable rules and procedures. If Plaintiff fails to file an Amend Complaint within the time limit set by the Court, this action will proceed on the original Complaint, (Doc. No. 1).

5. The Clerk is directed to mail a copy of the Complaint, (Doc. No. 1), and a new Section 1983 complaint form to Plaintiff.

6. **IT IS FURTHER ORDERED THAT** the Clerk of Court shall commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendants **Perry, Smith, Mitchell, Hopkins, Haynes, Rushin, Patch, Totou, Vanscoutovan,** and **Boss** who are current or former employees of NC DPS.

Signed: August 14, 2018

Frank D. Whitney
Chief United States District Judge