UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-103-MOC

| STANLEY CORBETT, JR., | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | **ORDER** |
| FRANK PERRY, et al., | ) |  |
| Defendants. | ) |  |

**THIS MATTER** comes before the Court on Defendant Dr. Gregory Haynes' Motion to Dismiss, (Doc. No. 67). Several motions are also pending.

## I. BACKGROUND

Incarcerated *pro se* Plaintiff's Complaint passed initial review on claims against several Defendants pursuant to 42 U.S.C. § 1983 and North Carolina law addressing incidents that allegedly occurred at the Lanesboro Correctional Institution. Defendant Haynes has filed a Motion to Dismiss arguing that Plaintiff has failed to state a claim against him for medical negligence under North Carolina law or a claim under § 1983 for deliberate indifference to a serious medical need.

**(1)** **Complaint** (Doc. No. 1)

Plaintiff alleges in his verified Complaint that he suffers from chronic hives, also known as urticaria. Plaintiff broke out with hives while incarcerated at Warren C.I. in March 2015. He was transferred to Lanesboro C.I. on April 19, 2015, where he suffered from inadequate medical care from April 2015, to May 12, 2016.

On April 10, 2015, Plaintiff went to see an outside dermatologist at the University of North

Carolina ("UNC"), who recommended several medications for Plaintiff's hive condition. The dermatologist also recommended that Plaintiff receive a follow-up examination in five weeks if the medications did not help.

Plaintiff submitted a sick call request and declared a medical emergency on April 19, 2015, because he had hives on his body that were causing swelling to his arms and legs, severe pain, and itching. Plaintiff wrote to Defendant Smith regarding his medical issues on April 23, 2015. On April 29, 2015, Plaintiff was moved from segregation to medical for observation because Plaintiff was on hunger strike to protest his lack of medical treatment. On May 3, 2015, Plaintiff submitted a grievance because he was not receiving the medications recommended by the UNC dermatologist, his sick calls were not being addressed, and his feet and legs had been going numb from the hives/swelling and were bleeding. On May 7, 2015, Plaintiff wrote to Defendant Mitchell about his sick calls and grievances not being processed. Plaintiff submitted a sick call request about the hives on his body, which were causing severe pain, swelling, and itching, on May 11, 2015. Defendant Vanscatovan denied Plaintiff's request for a medical emergency.

Plaintiff saw a doctor on May 15, 2015, about his hives who prescribed Benadryl and another medication. On May 21, 2015, after five weeks of continuous outbreaks of hives, Defendant Haynes prescribed Plaintiff one of the medications recommended by the UNC dermatologist. However, the prescription was for the medication was once per day even though the UNC dermatologist recommended it twice per day. Plaintiff did not receive the proper medications recommended by the dermatologist. On May 22, 2015, Defendant Toutu denied Plaintiff's hive medication, telling him that he did not get any medication for hives. On May 23, 2015, Plaintiff received Tretinoin cream and clindamycin for bumps/acne. On May 27, 2015, Defendant Toutu denied Plaintiff's hive medication again, saying he did not have any medication

2

for hives. On May 31, 2015, Plaintiff submitted a sick call request about hives, itching, pain, bleeding, and numbness. On June 1, and 6, 2015, Plaintiff submitted sick call requests and sent a copy to Defendants Smith and Mitchell. On June 7, 2015, Plaintiff declared a medical emergency due to itchy hives all over his body. Defendant Vanscotovan, the same nurse who denied Plaintiff's request for a medical emergency on May 11, gave Plaintiff Benadryl and calamine lotion. On June 11, 2015, Nurse Bradley denied Plaintiff's noon medication, telling him he did not have any noon medication. That same day, Defendant Rushin denied Plaintiff's evening and nighttime medications, telling Plaintiff that he did not get any medication for hives. On June 12, 2015, Defendant Patch denied Plaintiff's evening and nighttime medications, claiming that Plaintiff did not have any medication for hives. Plaintiff submitted sick calls, sent letters to Defendants Perry, Smith and Mitchell, and submitted a grievance about his medical issues between April 19 and June 24, 2015, but treatment was denied and/or delayed.

Plaintiff went to Charlotte Dermatology on June 24, 2015, more than two months after his UNC visit. It was recommended that Plaintiff see an allergy clinic. Plaintiff submitted numerous sick call requests between June 24, 2015, and March 4, 2016, about his medical conditions but they were ignored, delayed, or made to appear as though Plaintiff saw medical staff or refused sick call appointments. During this time period, Plaintiff declared numerous medical emergencies and requested to see an allergy clinic numerous times, and his requests for hive medication were constantly denied and delayed by Lanesboro C.I. medical staff. On July 1, 2015, Defendant Patch denied Plaintiff's nighttime medication, telling him that he did not have any medication. On July 14, 2015, Defendant Vanscotovan denied Plaintiff's sick call, saying that Plaintiff refused his appointment. On August 3, 2015, Defendant Haynes prescribed Periactin for Plaintiff's hives. On August 16, 2015, Plaintiff declared a medical emergency and Nurse Hill gave him Benadryl and

3

some cream for hives.

On August 18, 2015, Plaintiff's blood was drawn for an allergy test. He had been requesting this test for months but it was delayed by medical staff and Defendant Haynes, which contributed to the continuous hive outbreaks. The test results showed that Plaintiff is allergic to milk and peanuts. On September 1, 2015, Plaintiff submitted a sick call request regarding hives all over his body and asked to see the allergy clinic. On September 5, 2015, Plaintiff declared a medical emergency due to hives on his legs and Nurse Ratcliff gave him Benadryl.

On September 7, 2015, Plaintiff saw Defendant Haynes about hives on his thigh and arms, and requested to be scheduled to see the allergy clinic specialist. On September 8, 2015, Plaintiff declared a medical emergency about hives on his body and Nurse Crump gave him a tube of hydrocerin cream. On September 24, 2015, Plaintiff submitted a sick call request and a medical emergency due to hives and a swollen right leg/knee. Nurse Perkins gave him Benadryl.

On September 28, 2015, Plaintiff saw Defendant Haynes and Plaintiff again asked to be scheduled to see the allergy clinic. On October 21, 2015, Plaintiff broke out in hives all over his body. He declared a medical emergency but Defendant Boss denied this request. On October 22, 2015, Plaintiff continued to break out in hives all over his body. He declared another medical emergency which Defendant Boss denied again.

On November 9, 2015, Plaintiff saw Dr. Southerland about the hives on his body. She prescribed medication but it was not ordered until approximately two months later. On November 18, 2015, Defendant Boss denied Plaintiff's evening and nighttime medications for hives, claiming that Plaintiff did not have any medication. On November 20, 2015, Plaintiff submitted a sick call request concerning his continuous outbreaks of hives and requesting the medications that Dr. Southerland had prescribed, and to see the allergy clinic. On December 2, 2015, Plaintiff declared

a medical emergency due to hives on his arms, legs, and hands, and for swelling in his right hand and wrist. Nurse Wilkinson gave him Benadryl. On December 27, 2015, Plaintiff submitted a sick call request about hives on the top and back of his head and asked to see the allergy clinic. On December 28, 2015, Plaintiff declared a medical emergency about the itchy, painful hives on the back of his head. Nurse Morgan gave him Benadryl.

On January 1, 2016, Plaintiff saw Dr. Southerland about his hives. She prescribed steroids, Benadryl, and another medication. She told Plaintiff that she had prescribed it in November, 2015. She looked on the computer and saw that the medication was never ordered.

On January 1, 2016, Plaintiff spoke to Lanesboro C.I. Assistant Superintendent Beaver about a grievance complaining about inadequate medical treatment. Beaver told him that the medical staff was backlogged by 500 sick call requests and that medical staff from other regions come to Lanesboro to help. Plaintiff alleges that this backlog resulted in sick call requests being unanswered, thrown away, marked as refused, or marked as appointments when no appointment occurred.

On January 13, 2016, Plaintiff finally went to a sick call appointment. Defendant Totou denied Plaintiff's morning Benadryl and noon medications that same day. On February 24, 2016, Plaintiff submitted a sick call request about hives all over his body and requested to see the allergy clinic.

It took over eight months for medical staff at Lanesboro C.I. to schedule an appointment for him to see an allergy clinic on March 4, 2016. Dr. Collins prescribes several medications for hives. Plaintiff was transferred to Alexander C.I. on March 30, 2016. He did not receive the medications that Dr. Collins prescribed until May 12, 2016.

Only one or two of Plaintiff's numerous sick call requests while he was in Lanesboro C.I.'s

Anson Unit between April 19, 2015, to March 30, 2016, were processed according to NC DPS Medical/ Health Policy & Procedure. Plaintiff had to declare multiple medical emergencies and go on hunger strikes just to see medical staff. Almost every time Plaintiff saw a doctor at Lanesboro C.I., he was on a hunger strike. The delay in medical treatment led to pain, itching, bleeding, swelling, suffering, anxiety, and mental and emotional distress.

Defendants Mitchell, John Doe, Haynes, and Hopkins, are responsible for medical care and for arranging for specialized medical care outside of the prison. Defendants Perry and Smith are responsible for medical care concerning all prisoners within NC DPS Division of Adult Corrections. Defendants have not implemented treatment policies or procedures by authorizing an effective sick call system, a system for following up outside medical professionals' recommendations, or a system for scheduling outside medical appointments in a timely manner. Defendants have failed to provide medical treatment for Plaintiff's condition that are consistent with current medical community standards.

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs. Defendants Perry, John Doe, Hopkins, Smith, and Mitchell's failure to train their staff, failing to take action, and delaying treatment despite their first-hand knowledge of Plaintiff's medical condition, medications, and treatment. Defendant Haynes' failure to follow recommendations from the dermatologists at UNC and Charlotte Dermatology. Defendants Hopkins, Vanscotovan, Totou, Patch, Rushin, Boss, and John Doe denied and ignored Plaintiff's sick call requests, grievances, and medical emergencies, and denied him his prescribed medications. Defendants Mitchell, John Doe, Haynes, and Hopkins failed to schedule a timely appointment for Plaintiff to see the allergy clinic. Defendants Perry, Smith, Mitchell, John Doe, Vanscotovan, and Hopkins failed to establish an effective sick call system, failing to establish a sufficient system for following

outside medical recommendations, and failing to schedule outside medical appointments in a timely manner. Defendants Vanscotovan and Boss failed to provide adequate medical care by denying his medical emergencies about chronic urticaria. Defendants Totou, Patch, Rushin, Boss, Mitchell, John Doe, and Hopkins failed to provide Plaintiff with the prescribed medications. Defendants John Doe, Haynes, and Hopkins also failed to inform Plaintiff that the consistent swelling beneath his skin was angioderma which, along with chronic urticaria, can affect his lungs, muscles, and gastrointestinal tract.

Plaintiff alleges that Defendants Mitchell, John Doe, Haynes, Hopkins, Vanscotovan, Totou, Patch, Rushin, and Boss all agreed on an illegal course of conduct that they knew violated Plaintiff's constitutional rights in violation of 42 U.S.C. § 1985.

Plaintiff alleges that Defendants Perry, Smith, Mitchell, John Does, and Hopkins failed to properly train medical staff who they oversee which is negligence under the North Carolina Tort Claims Act.

He seeks declaratory judgment, injunctive relief, compensatory and punitive damages, the costs of this suit, any other relief the Court deems just and equitable, and a jury trial.

**(2)** **<u>Motion to Dismiss</u>** (Doc. No. 67)

Defendant Haynes seeks dismissal of the claims against him with prejudice. He argues that Plaintiff has failed to state a claim for medical malpractice under North Carolina law because he has not complied with the pleading requirements set forth in North Carolina Rule of Civil Procedure 9(j). Plaintiff has failed to circumvent the Rule 9(j) certification by showing *res ipsa loquitur*. Therefore, Plaintiff has failed to state a North Carolina claim for medical negligence.

Defendant Haynes further argues that Plaintiff has failed to state a claim for deliberate indifference to a serious medical need under § 1983. Plaintiff's allegations, which primarily focus

7

on the failures of the prison medical system as a whole and delays in treatment, do not show that Defendant Haynes' treatment was grossly incompetent, inadequate, so excessive as to shock the conscience, or intolerable to fundamental fairness. While Plaintiff argues that it is Dr. Haynes' fault that his appointment with the Allergy Clinic was not scheduled until March 2016, Haynes was not responsible for the delay, Plaintiff's claims do not involve a life-threatening illness or require emergency medical attention, Haynes did prescribe the recommended medication which falls far short of deliberate indifference, and Plaintiff's criticisms of Haynes did not lead to any alleged injury.

**(3)** **Plaintiff's Response** (Doc. No. 71)

The Court issued an Order on December 13, 2019 pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), instructing Plaintiff regarding his right to respond to Defendant Haynes' Motion and cautioning Petitioner that failure to do so may result in the relief that Defendant Haynes seeks. (Doc. No. 69).

Plaintiff filed an unverified Response in which he alleges that he finally received allergy tests on August 18, 2015 that showed he is allergic to peanuts and milk. His diet was not changed until September 2015. Defendant Haynes delayed the allergy tests which contributed to his "continuous outbreak of hives &/or injuries." (Doc. No. 69 at 7). Plaintiff's hives continued to appear after his diet was changed in September 2015 "which was when Defendant Haynes recommended that it be modified to exclude peanuts & milk." (Doc. No. 69 at 7).

Plaintiff states that he "never alleged that Defendant Haynes was negligent." (Doc. No. 69 at 8).

Plaintiff notes that, at the time his Response was filed, discovery was not complete. He appears to suggest that dismissal should not be granted until he has the opportunity to discover and

8

review the pertinent documents.

With regards to his § 1983 claims, Plaintiff argues that the UNC, Charlotte Dermatology, and Carolina Asthma & Allergy Clinic doctors prove that his medical condition is sufficiently serious to support a deliberate indifference claim. Defendant Haynes knew of and ignored the excessive risk to Plaintiff's health and safety in that he "knew that by not properly treating Plaintiff's serious medical needs that it would result to him experiencing further significant injury" and that Haynes "denial and delay of medical treatment caused Plaintiff to receive more pain & suffering." (Doc. No. 71 at 12). Plaintiff notes that: he did not receive Allegra until 1 ½ months after the UNC dermatologist recommended it; Haynes waited 2 ½ months before sending Plaintiff to see a dermatologist at Charlotte Dermatology even though the UNC dermatologist recommended a repeat visit within five weeks if the Allegra did not work; by failing to change Plaintiff's diet until September 2015 whereas an allergy test conducted on August 18, 2015 revealed that he is allergic to peanuts and milk; and Haynes waited more than eight months after a dermatologist recommended that Plaintiff see an allergist, on June 24, 2015, before sending Plaintiff to see an allergist on March 4, 2016. Plaintiff argues that Haynes' "failure to follow the dermatologist recommendation, as well as schedule a timely appointment" reveals deliberate indifference. (Doc. No. 71 at 13). He claims that Haynes further violated his constitutional rights by failing to inform Plaintiff of angiodema, the swelling Plaintiff experienced beneath his skin that is associated with hives, and chronic urticaria, can affect his lungs, muscles, and gastrointestinal tract.

**(4)** **Defendant's Reply** (Doc. No. 74)

Contrary to Plaintiff's assertions, the allegations that Defendant Haynes delayed medical treatment and provided incorrect medication dosages are instances of alleged medical negligence

governed by N.C. Gen. Stat. § 90.21.11, *et seq.* Therefore, Plaintiff was required to comply with the pleading requirements set forth in Rule 9(j) and Plaintiff's failure to do so requires dismissal. This should completely extinguish Plaintiff's allegations of medical negligence against Defendant Haynes. However, Plaintiff also alleges that Defendant Haynes' failure to provide the medications recommended by the UNC dermatologist and failure to schedule a timely appointment for Plaintiff to be seen at the Allergy Clinic was deliberate indifference to a serious medical need. However, these are nothing more than alleged medical negligence claims that should be dismissed.

To the extent that Plaintiff's allegations are read to be deliberate indifference claims, Plaintiff has failed to state a claim for relief. Plaintiff's claims alleging failure to treat chronic hives, an illness that is not life-threatening and did not require emergency medical attention, does not shock the conscience and did not demonstrate deliberate indifference to Plaintiff's medical needs.

**(5)** **Plaintiff's Surreply** (Doc. No. 75)

Plaintiff argues that Defendant Haynes was a medical supervisor at Lanesboro so the claims against him are not limited to the four encounters between Haynes and Plaintiff. Plaintiff's negligence claims apply to other defendants, not Haynes, so Rule 9(j) does not apply to this case. Chronic urticaria (hives) "is definitely a life-threatening illness." (Doc. No. 75 at 2). Further, discovery is not complete so Defendant Haynes' Motion should be denied as a matter of law.

**II.    STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir.1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com. Inc., 591 F.3d 250, 255 (4th Cir. 2009). Nor does a court accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n. 26 (4th Cir. 2009).

### III. DISCUSSION

#### (1) Deliberate Indifference

"[T]he Eighth Amendment's prohibition against 'cruel and unusual punishments' [extends] to the treatment of prisoners by prison officials," Hill v. Crum, 727 F.3d 312, 317 (4th Cir. 2013), and "forbids the unnecessary and wanton infliction of pain," id. (internal quotation marks omitted). The Supreme Court has explained that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation and internal quotation marks omitted).

The deliberate indifference standard has two components. The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. at 241 (internal quotation marks omitted). A mere delay or

11

interference with treatment can be sufficient to constitute a violation of the Eighth Amendment. Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009). However, allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998).

Plaintiff alleges that he suffers from chronic hives, a painful and dangerous condition for which he has received medical treatment on numerous occasions. He further alleges that Defendant Haynes delayed treatment and denied him the medications and treatments recommended by other doctors. Plaintiff has adequately stated a claim for deliberate indifference to a serious medical need and Defendant Hayne's Motion to Dismiss for failure to state a deliberate indifference claim will be denied.

**(2)** **Medical Negligence**

The Complaint alleges delays and incorrect treatment for Plaintiff's chronic hives. Defendant Haynes argues in the Motion to Dismiss that Plaintiff's claim is one for medical malpractice and that it is barred because Plaintiff failed to Comply with Rule 9(j) of the North Carolina Rules of Civil Procedure. Plaintiff states in his Response to the Motion to Dismiss that he "never alleged that Defendant Haynes was negligent." (Doc. No. 69 at 8).

As Plaintiff states that he has not attempted to state a medical malpractice claim under North Carolina law and, Defendant Haynes' Motion to Dismiss addressing such a claim is denied as moot.

## IV. PENDING MOTIONS

**(1) Motion to Withdraw**

Defense counsel Joseph Finarelli has filed a Motion to Withdraw as Attorney. (Doc. No. 78). Mr. Finarelli has shown good cause to support his withdrawal and he further states the withdrawal will not prejudice either party or delay this case. See LCvR 83.1(f). The Motion will be granted.

**(2) Motion to Stay Discovery**

Defendant Haynes' Motion to Stay Plaintiff's Discovery Requests, (Doc. No. 81), in which he asks the Court to stay this case until the Court has ruled on Defendant Haynes' Motion to Dismiss and, alternatively, for an extension of time in which to respond to Plaintiff's discovery requests until 30 days after the Court rules on Defendant Haynes' Motion to Stay.[1]

Plaintiff has filed a Response, (Doc. No. 84), arguing that a stay of discovery should be denied because it would be a burden on Plaintiff and NCPLS counsel to have some discovery process continue while other discovery process involving the same claims is stayed, discovery could lead to evidence relevant and necessary for Plaintiff to counter Haynes' arguments in his dispositive motion, and Haynes has not shown why he is likely to prevail on his Motion to Dismiss.

Defendant Haynes filed a Reply, (Doc. No. 86), arguing that he is no longer employed at Lanesboro and lacks access to much of the information requested in discovery, and attempting to respond to discovery requests without this information would be futile. Further, Plaintiff has violated the Case Management Plan, (Doc. No. 51), by propounding discovery in excess of the discovery limits.

Defendant Haynes' request for a stay will be denied. However, his request for an extension

---

[1] Also pending are Defendant Haynes' Motions for Protective Order, (Doc. Nos. 82, 85, 87), and Plaintiff's Motion for Leave to Serve Additional Interrogatories, (Doc. No. 89), that will be addressed in separate orders.

13

of time to respond to Plaintiff's discovery requests is granted for 30 days from the entry of this Order.

V. **CONCLUSION**

In sum, for the reasons stated herein, Defendant Haynes' Motion to Dismiss is denied, Defense counsel's Motion to Withdraw is granted, and Defendant Haynes' Motion to Stay Plaintiff's Discovery Requests is granted in part and denied in part.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant Haynes' Motion to Dismiss, (Doc. No. 67), is **DENIED** as to the claim of deliberate indifference to a serious medical need and is **DENIED** as moot as to the claim of medical negligence.

2. Defense counsel Joseph Finarelli's Motion to Withdraw as Attorney, (Doc. No. 78), is **GRANTED**.

3. Defendant Haynes' Motion to Stay Plaintiff's Discovery Requests, (Doc. No. 81), is **GRANTED** in part and **DENIED** in part. The request for a stay is denied but the request for an extension of time to respond to Plaintiff's discovery requests is granted for 30 days from the entry of this Order.

Signed: March 24, 2020

Max O. Cogburn Jr
United States District Judge